IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TROY ALLEN JEFFRIES and | ) | Bankruptcy Case No. |
| DENISE SHANNON JEFFRIES, | ) | 06-21158-7-drd |
| Debtors. | ) | |
| _____ | ) | |
| BANK OF IBERIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 07-2020 |
| | ) | |
| TROY ALLEN JEFFRIES | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DENISE SHANNON JEFFRIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Complaint to Determine Dischargeability of Debt ("Complaint") filed by plaintiff Bank of Iberia ("Plaintiff" or the "Bank") against Troy and Denise Jeffries ("Defendants" or "Debtors")[1]. Plaintiff seeks that the debt owed to it by Debtors be deemed nondischargeable under 11 U.S.C. § 523(a)(6) and that Debtors' be denied a discharge under § 727(a)(2). This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my

---

[1] Plaintiff named both Debtors as Defendants in this adversary proceeding. However, Mrs. Jeffries was not a party to the promissory note and security agreement at issue and is not liable on the debt. In addition, there is no evidence that Mrs. Jeffries caused any of the damage to the Vehicle of which Plaintiff complains. Thus, the Court will grant the discharge of this specific debt as to Mrs. Jeffries. Hereinafter, any reference to "Debtor" in the singular refers to Mr. Jeffries only.

Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, Plaintiff's request to deny discharge under § 727(a)(2) is denied. However, the Court finds that any damage caused to the property meets the standards of a willful and malicious injury under 11 U.S.C. § 523(a)(6) and grants Plaintiff's request for nondischargeability as set forth below.

## I. FACTUAL BACKGROUND

On July 15, 2002, debtor Troy Jeffries entered into a promissory note and security agreement with the Bank of Iberia ("Plaintiff") for a loan in the amount of $37,072.04 to purchase a 2002 Red Dodge Ram 3500 Quad Cab (the "Vehicle") which was used as collateral for the loan. Plaintiff's Ex. 8. The Vehicle was purchased for use in Mr. Jeffries' excavating business and also for his personal use. Shortly after he purchased the Vehicle, Mr. Jeffries removed the regular truck bed with flare sides and replaced it with a flat bed, which he testified is common practice in the excavating industry. He testified that he put the regular truckbed with flare sides, the rear bumper and tailgate in his work yard near his home.

On August 28, 2006, Mr. Jeffries had failed to make payments to the Bank on the promissory note and the Bank had the Vehicle repossessed by Professional Recovery and Investigation, LLC, a company which it regularly uses for repossessions. *See* Plaintiff's Ex. 5. In the Vehicle Condition Report prepared by the recovery company, the truck was noted to be in average general condition, average mechanical condition, average tires, average interior that was dirty, with worn and torn seats and a cigarette burn in the passenger seat. It was also noted in the report that the front bumper was dented and the right rear corner of the flatbed was dented. Ex. 5. Mr. Jeffries testified that at that time the factory dual wheels were still on the Vehicle.

Subsequent to repossession of the Vehicle, Debtors redeemed the Vehicle from the Bank. Mr. Jeffries testified that he made a couple more monthly payments to the Bank.

On October 26, 2006, Debtors filed a Chapter 7 bankruptcy petition and listed Bank of Iberia as a secured creditor on their Schedules. On December 1, 2006, the Bank was granted relief from the automatic stay in order to take possession of the Vehicle and repossessed the Vehicle in February 2007. On April 30, 2007, the Bank filed this adversary proceeding seeking nondischargeabiity of the debt owed to it under § 523(a)(6) and denial of Debtors' general discharge under § 727(a)(2).

At the hearing, Carol Groves, Vice-President of Bank of Iberia, testified that the condition of the Vehicle from the first repossession in August 2006 and the second repossession in February 2007 was substantially different. She testified that the flatbed had been removed and the regular truckbed was just sitting unattached on the back of the truck; that the dual wheels had been removed and replaced with single wheels and tires; and that the truck would not run. The Bank concluded that the Vehicle was worthless because it would be unable to resell it. In December 2006, the NADA retail value for the Vehicle was $18,475 and the wholesale value was $15,625. Plaintiff's Ex. 12.

Richard Wright, Executive Vice-President at Bank of Iberia, also testified at the hearing that at the time of the first repossession the taillights were attached and the flatbed and dual wheels were both attached. However, Mr. Wright testified that at the February 2007 repossession, the flatbed had been removed, the regular truckbed was not attached and the dual wheels, flare sides and taillights were missing. *See* Plaintiff's Exs. 9, 10 & 14-30.

Larry Herx, who has been a mechanic for 30 years and has numerous mechanic

certifications, testified similarly.  He stated that at the February 2007 repossession the truckbed was not attached, the dual wheels, flared sides, taillights and rear bumper were removed.  He also testified that the fuel pump had been tampered with or switched out, that the oil had not been changed for at least 10,000 miles and that the Vehicle would not start and could not be sold in its present condition.  He further testified that the original truckbed looked like it had been left outside for the past four years, which Mr. Jeffries did not dispute.  Based on his knowledge, Mr. Herx testified that it would cost $5,400 to repair the Vehicle which included $1,800 for 6 new tires and wheels, $450 for a new fuel pump, $2,000 for a new truckbed; $150 for a rear bumper and $1,000 for labor.  He also testified that if the Vehicle would not start after making those repairs that it may need a new engine which would cost $8,250 with labor. However, he also stated that he was unable to give an opinion on whether a new engine would be necessary at the time of the hearing.

   Mr. Jeffries testified that he did have the regular truckbed removed a couple of months after he purchased the Vehicle and replaced with a flatbed.  He testified that he placed the truckbed with the flaresides attached upside down in his work yard, along with the rear bumper, taillights and ball hitch.  He stated that he removed the dual wheels and put them on another of his work trucks in order to get use from them and put single wheels on the Vehicle.  He testified that he had planned to put the dual wheels back on the Vehicle prior to repossession by the Bank but that he did not receive notice of the day that the Vehicle was being repossessed.  He stated he removed the flatbed from the Vehicle after he filed his bankruptcy petition and had the regular truckbed set on the Vehicle but did not attach it.   Mr. Jeffries testified that he had no idea what happened to the flare sides that had been attached to the truckbed, nor did he know what

happened to the missing rear bumper, taillights or hitch. He stated that he never looked at the fuel pump to determine its condition but that he did not tamper with it and didn't remember when he last changed the oil in the Vehicle. He testified that he wasn't aware he was to keep the Vehicle from harm and that there are many employees and other people on his property that could have removed the missing items.

## II. DISCUSSION AND ANALYSIS

### A. 11 U.S.C. § 727(a)(2)

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh and drastic penalty." *American Bank of Spikard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Florte L.L.C., et al v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir.2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D. Mo.2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr. W.D. Mo.1999). A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 973 (Bankr. W.D. Mo.1997).

To make a case for denial of discharge under § 727(a)(2), a plaintiff must demonstrate that the debtor transferred, removed, destroyed, mutilated or concealed assets that might otherwise have been available to satisfy the claims of creditors. *See Sendecky*, 283 B.R. at 763. Section 727(a)(2) provides:

>(a) The court shall grant the debtor a discharge, unless-
>....
>(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
>
>(A) property of the debtor, within one year before the date of the filing of the petition; or
>(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) & (B). Actual, subjective intent to hinder, delay or defraud must be demonstrated as a prerequisite to discharge. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1987); *Stanke*, 234 B.R. at 457; *Diamond Bank v. Carter (In re Carter)*, 203 B.R. 697, 706 (Bankr.W.D. Mo.1996); *In re Berry*, 37 B.R. 44, 46 (Bankr. W.D. Mo. 1983).

In applying § 727(a)(2), courts have noted that the section seeks to protect the rights of unsecured creditors. *In re Lane*, 166 B.R. 133, 138-39 (Bankr. E.D. Mo. 1993); *In re Hoffman,* 70 B.R. 155, 160 (Bankr. W.D. Ark.1986); *In re Ellefson,* 54 B.R. 16 (Bankr. W.D. Wisc.1985); *In re Harris,* 8 B.R. 88, 90-91 (Bankr. M.D. Tenn.1980); *cf. In re Lett*, 238 B.R. 167, 191 (Bankr. W.D. Mo. 1999) (finding that although property was encumbered there was substantial equity in the property and denied discharge under §727(a)(2)). Denying a debtor his discharge because he "transferred, removed, destroyed or mutilated" fully-encumbered property would not further the goal of protecting unsecured creditors because the fully-encumbered property would not have been available to satisfy the unsecured creditors' claims. *Hoffman,* 70 B.R. at 160; *Harris,* 8 B.R. at 90-91. In support of their position, these courts have pointed to the language of § 727(a)(2) which refers to property of the estate and property of the debtor and reason that when property is fully-encumbered it is neither property of the debtor before filing nor property of the estate after the debtor files his petition. *Hoffman,* 70 B.R. at 160; *Ellefson,* 54 B.R. at 16; *Harris,*

8 B.R. at 90-91. This Court agrees that Debtor's destruction or misuse of fully-encumbered property (and property with no equity) does not warrant denying him a general discharge under § 727 of the Bankruptcy Code because such an act does not harm the unsecured creditors whom the section seeks to protect.  Here, there was testimony that the NADA retail value of the Vehicle was $18,475 and wholesale value was $15,625.  The debt owed to Plaintiff by Debtor is in the amount of $18,217.43 plus interest, which causes the Vehicle to be fully-encumbered. Thus, the Court will not deny Debtor his general discharge pursuant to § 727 of the Bankruptcy Code.

### B.  11 U.S.C. § 523(a)(6)

In a nondischargeability claim under 11 U.S.C. § 523(a), the burden of proof falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions from discharge, however, are strictly construed so as to give the maximum effect to the policy of the Bankruptcy Code to provide debtors with a "fresh start." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) affirming the Eighth Circuit's opinion in *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc) (debt cannot be exempt from discharge unless it is based on an intentional tort); *Adams v. Zentz*, 157 B.R. 141, 144 (Bankr. W.D. Mo. 1993).

Plaintiff's complaint asserts that Debtor damaged the Vehicle wilfully and maliciously. Plaintiff claims that any debt arising out of Debtor's actions arose from willful and malicious conduct which should not be discharged under 11 U.S.C. § 523(a)(6).[2]

---

[2]Section 523(a)(6) of the Bankruptcy Code provides :
(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
. . .

Under § 523(a)(6), a debtor is not discharged of any debt for "willful and malicious injury" to the property of another. *Johnson v. Fors*, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge. *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir. 1999). "Willfulness" is defined as "headstrong and knowing" conduct and "malicious" as conduct "targeted at the creditor. . . at least in the sense that the conduct is certain or almost certain to cause. . . harm." *In re Patch*, 356 B.R. 450, 456 (B.A.P. 8th Cir. 2006) (citing *Scarborough*, 171 F.3d at 641).

Plaintiff contends that Debtor willfully and intentionally caused substantial damage to the Vehicle by removing the dual wheels and tires, the truck bed, flare sides, tailgate, rear bumper and hitch. Plaintiff must demonstrate, pursuant to the terms of the statute, that the damage to the Vehicle was willful and malicious.

### 1. Willfulness

In *In re Long,* 774 F.2d 875, 881 (8th Cir. 1985), the Eighth Circuit defined "willful" as "headstrong and knowing" conduct. *See also, Patch*, 356 B.R. at 457. The United States Supreme Court addressed the term "willful" for purposes of § 523(a)(6) and concluded that:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury .... the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts.

---

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

*Geiger*, 523 U.S. at 61.

Accordingly, under § 523(a)(6), Plaintiff must demonstrate that Debtor intended to injure Plaintiff's property.  Debtor admits to having intentionally removed numerous parts from the Vehicle including the original truck bed with its flare sides, tailgate, taillights, bumper and hitch. The Court finds from the testimony that the Debtor also removed the original fuel pump. Although Debtor denied having "tampered with it," the testimony of Plaintiff's mechanical expert was that the fuel pump on the Vehicle when he inspected it was not the original fuel pump and Debtor offers no explanation as to how this occurred unless he removed it.  He also admits to having removed the dual wheels and placed them on another vehicle.  This was no small feat as, according to the testimony, the rims on the wheels he placed on the Vehicle would not originally fit and had to be cut with a torch to make it possible to place them on the Vehicle.  Removal of these parts was substantially certain to cause economic harm to the creditor if not restored prior to repossession of the Vehicle as the absence of these items would substantially affect its value. Plaintiff offered evidence that some of the parts removed from the Vehicle had after-market value, in an apparent effort to entice the Court to conclude that the Debtor had sold these parts and pocketed the cash.  There is insufficient evidence, however, for the Court to make such a finding.  On the other hand, the Court finds the Debtor's explanations, or lack of explanations, equally lacking in credibility.  Debtor testified that he has absolutely no notion as to what may have happened to the flare sides, the tailgate, the rear lights, the bumper or hitch.  He testified that these items were originally attached to the bed which was sitting on his property in a place where others might have had access to them, apparently suggesting to the Court that someone else may have stolen them.  The Court finds it difficult to believe that the Debtor would not have

observed such activity, especially considering the effort it would have taken to remove the flare fenders from the truck bed as they were bolted on. Plaintiff essentially cannibalized the Vehicle and failed to make any effort to restore it to its original condition (or at least to the condition it was in when it was repossessed and then returned to him) despite having formulated an intention early in the case to surrender the Vehicle to the Bank and knowing that it had obtained relief from the automatic stay. His belated and inadequate offer, made during the middle of trial, to restore the dual wheels does not change this Court's view. The Court is convinced that Debtor damaged the Vehicle in numerous ways prior to the second repossession and the Plaintiff, therefore, has a claim against Debtor for that damage. Based on the evidence introduced by Plaintiff and the lack of any credible explanation from Debtor, the Court is equally convinced that Plaintiff has established that the damage was done with an intent to injure Plaintiff and that it should therefore be nondischargeable pursuant to § 523(a)(6). *See, e.g., In re Thompson*, 315 B.R. 94, 106 (Bankr. W.D. Mo. 2004) (denying dischargeability of claim under § 523(a)(6) based partly on debtors failure to offer any credible explanation regarding missing collateral).

**2. Maliciousness**

The Court also must address the question of whether Debtor's actions were also malicious. In order to have a meaning independent from willful, "...malice must apply only to conduct more culpable than that which is in reckless disregard of creditors' interests and expectancies." *Erickson v. Halverson (In re Halverson)*, 226 B.R. 22, 26 (Bankr. D. Minn.1998) (citing *Long*, 774 F.2d at 881). "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) (citing *Waugh v. Eldridge*

*(In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996)); *see also e.g., In re Miera* 926 F.2d 741, 743 (8th Cir. 1991); *Mercury Marine Acceptance Corp. v. Wheeler (In re Wheeler)*, 96 B.R. 201, 205 (Bankr. W.D. Mo.1988); *Cassidy v. Minihan*, 52 B.R. 947, 950 (W.D. Mo. 1985). "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Halverson*, 226 B.R. at 26. "A wrongful act is malicious if...there exists a 'knowing wrongfulness or knowing disregard of the rights of another'." *Fors*, 259 B.R. at 137 (citing *Erickson v. Roehrich (In re Roehrich)*, 169 B.R. 941, 945 (Bankr.D.N.D.1994)). "A finding of malice does not require a finding of ill will, but rather a lack of just cause or excuse." *Patch*, 356 B.R. at 458 (citing *In re Muhammad*, 135 B.R. 294, 298 (Bankr. N.D. Ill. 1991)). "If the debtor's conduct was inexcusable and resulted in an inevitable injury to the plaintiff, it is malicious." *Id.*

This Court may consider both direct evidence of Debtor's subjective state of mind and evidence of the surrounding objective circumstances, and then may make appropriate inferences as to whether Debtor harbored the proscribed intent. *In re Long*, 774 F.2d at 881. Based on the extent of the damage as discussed above and Debtor's failure to correct or repair the damage prior to the repossession, the Court believes that Plaintiff has shown that Debtor had the requisite intent to satisfy the "malicious" requirement of § 523(a)(6).

In order to prevail in this case, Plaintiff had to establish by a preponderance of the evidence that Debtor willfully and maliciously injured the property. The Court finds that it has carried that burden and established a claim under 11 U.S.C. § 523(a)(6). Much of what has been said above with respect to the wilfulness requirement applies equally to the requirement that Debtor's conduct be proven to be malicious. As noted above, it is not necessary that the Plaintiff

11

prove that there is subjective ill will. As also noted above, Debtor's conduct was targeted at the Bank in that it was certain to substantially reduce the value of the Vehicle and harm its economic interest. The removal of various parts was done intentionally and the Debtor is either unable to explain the fate of missing parts or to justify his failure to restore them to the Vehicle knowing that it would eventually be repossessed by Plaintiff. Accordingly, the Court concludes that Plaintiff's evidence established that its claim against the Debtor arises from willful and malicious conduct such that it should be nondischargeable under § 523(a)(6). As noted, such an injury requires proof that Debtor acted with an intent to injure Plaintiff or its property and the evidence establishes that the condition of the Vehicle was the result of such an intention.

### C.  DAMAGES

While Plaintiff has asked that this Court find the entire debt nondischargeable, the debt may be declared nondischargeable only to the extent of the damage caused by Debtor's wilful and malicious conduct. *See, e.g., In re Howard*, 6 B.R. 256, 257 (Bankr. Fl. 1980) ("The exception to discharge in § 523(a)(6) sounds in tort, not breach of contract. Therefore, any judgment awarded under this section should be for actual injuries suffered, notwithstanding the amount of the debt."); *cf., In re Lewis*, 31 B.R. 83 (Bankr. Ok. 1983) (holding value of collateral nondischargeable in conversion case, not balance of debt owed). In this instance, Plaintiff's damages would be measured by the extent to which it would have had value in the collateral to recover its debts, but for the Debtor's wilful and malicious conduct causing a reduction in its value.

The general rule for measuring damage to personal property by others is the difference between the fair market value immediately before and immediately after the event causing the

damage. *Orr v. Williams*, 379 S.W.2d 181, 189 (Mo. App. 1964). One of the exceptions to the general rule is that the cost of repair may be used to calculate damages when the property can be completely restored to its former condition at a cost less than its diminution in value. *Tull v. Housing Authority of City of Columbia*, 691 S.W.2d 940, 942 (Mo. App. 1985); *Southwestern Bell Tel. Co. v. Rawlings Mfg. Co.*, 359 S.W.2d 393, 399 (Mo. App. 1962). In order to measure damages by the cost of repair, there must be evidence that the cost of repair is less than its diminution in value. *Southwestern Bell,* 359 S.W.2d at 399.

In this case, the December 2006 NADA retail value was $18,475 and wholesale value was $15,625. The evidence submitted at trial by Plaintiff shows that the cost to repair the Vehicle to its former condition would be $5,400. Plaintiff also submitted testimony that an additional $8,250 in repairs could be required if a new engine is necessary for the Vehicle to run. However, Plaintiff did not establish that this repair will in fact be necessary and the Court is not willing to grant damages for a repair that may not be required. Plaintiff also submitted damages for attorneys' fees of $3,698 and costs of $479.65. Debtor did not object to the reasonableness of the fees. Nor did he suggest that the fees were not recoverable under the governing documents, the applicable state law or the Bankruptcy Code. Accordingly, the Court awards Plaintiff damages in the amount of $9,577.65.

### III.  CONCLUSION

For all the reasons cited above, the Court finds the debt owed to Plaintiff by Debtor Troy Jeffries is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:     October 17, 2007           /s/ Dennis R. Dow

                                              THE HONORABLE DENNIS R. DOW

                                              UNITED STATES BANKRUPTCY JUDGE

Copies to:

Jill D. Olsen

Charles F. Johnson

Janice A. Harder, Trustee